STARNES *v.* STATE.*

(Division B. June 11, 1928.)

[117 So. 520. No. 27117.]

---

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 945, n. 18.

*J. W. T. Falkner* and *Creekmore & Creekmore,* for appellant.

*James W. Cassedy, Jr.,* Assistant Attorney-General, for the state.

PACK, J. The appellant was tried upon a charge of murder, resulting in a conviction of manslaughter, and

sentenced to serve a term of ten years in the state penitentiary. From this conviction and sentence, he prosecutes this appeal.

The deceased, Elton Stewart, and appellant were both young white boys about fifteen years of age. They were attending a night service of a revival meeting at a neighborhood church. The congregation was assembled in the church, but these two boys, the deceased and the appellant, remained on the outside with a number of other boys. While there, an altercation arose between them, in which appellant threatened to cut Stewart's head off with a razor. A friendly bystander took the razor away from appellant, who then went to an automobile, and procured therefrom a "jack handle," and placed the same under his belt. This jack handle was from fifteen to eighteen inches long, with a bend or crook at one end, and about an inch wide and one-fourth of an inch in thickness. It was a handle in ordinary use for automobile jacks. A crowd of young men, including the participants in this unfortunate tragedy, went to a farm-house some three hundred yards from the church to get water. The altercation was there renewed, and, according to the state's proof, deceased asked appellant if he (appellant) had called him a "s—— of —— a b——," and appellant replied, "I damn sure did." Deceased then said that appellant would have him to whip. Whereupon appellant, who at that moment was standing on the porch, and the deceased on the ground, pulled out the iron jack handle, and threw it at deceased with such force that the end thereof penetrated into his skull five inches, requiring the efforts of two men to pull it out. Deceased fell mortally wounded, from which wound he died shortly thereafter without regaining consciousness.

A number of witnesses for the state testified that deceased had no weapon of any kind at the time of the fatal blow. The testimony for the defense tended to show that deceased struck appellant with a stick resembling a

hoe handle, breaking the stick as he struck, and that appellant threw the jack handle as the deceased was about to strike the second blow.

The only assignment of error goes to the instruction given the State in these words:

"The court charges the jury for the state that manslaughter is the killing of a human being without authority of law, not in necessary self defense, by the use of a deadly weapon, without malice aforethought, and in the heat of sudden passion, and, if the jury believe from the evidence in this case beyond a reasonable doubt that the defendant, H. C. Starnes, so killed the deceased, Elton Stewart, it is the sworn duty of the jury to find the defendant guilty of manslaughter, and the form of your verdict will be: We, the jury, find the defendant guilty of manslaughter."

Contention is made that the jack handle is *per se* a deadly weapon, and that the effect of this instruction was to take away from the jury the right to determine from the evidence if it was a deadly weapon. In other words, the instruction, as contended by appellant, assumes the use of a deadly weapon when it should have merely defined deadly weapons, leaving it for the jury to decide whether the handle used was a deadly weapon. We do not think the instruction subject to the criticism made by appellant. The first part of the instruction follows the statutory definition of manslaughter. Then follows: ". . . If the jury believe from the evidence beyond reasonable doubt . . . that defendant . . . so killed the deceased . . . ," etc. The phrases "from the evidence" and "so killed" modify the preceding part of the instruction. Adopting the language employed by this court in *Golding* v. *State,* 144 Miss. 298, 109 So. 731, "we think that the instruction, construed, according to the rules of grammar, as well as according to common understanding, means that the jury could not convict,

unless the evidence showed, beyond reasonable doubt, each of the necessary elements of the crime."

The court committed no error in granting this, instruction; consequently the judgment and sentence of the court below must be affirmed.

*Affirmed.*

*Corpus Juris-Cyc. References: Homicide, 30CJ, p. 285, n. 38.